PER CURIAM.
This is a devolutive appeal of the East Baton Rouge Parish School Board and Lloyd L. Lindsey from a judgment of the lower court granting to Dr. Lloyd V. Funchess a preliminary injunction against the said appellants, recognizing the validity of his title as Parish Superintendent of Schools for the term of four years beginning July 1, 1961, and enjoining and restraining said appellants from interfering with him in any way in exercising and enjoying the duties and functions of his office.
*358 We are not concerned with all the questions that the lower court had before it with regard to procedure or the nature of the remedy sought for relief in this case, but we have a definite stipulation as to the only question before this court, namely:
“Because of the importance of this case to the people of the Parish of East Baton Rouge, Louisiana, and the necessity for a speedy determination of the issues involved, appellants, Lloyd L. Lindsey and the East Baton Rouge Parish School Board, have agreed to waive certain of their objections and defenses on this appeal so as to narrow the issues involved to the question of title to the office of Superintendent of Schools of East Baton Rouge Parish.
“It is agreed and stipulated by all parties in this cause that all of the issues of fact are correctly set forth in the stipulations previously entered into by and between the parties and that said stipulation together with the present stipulation shall constitute the record on appeal insofar as questions of fact are concerned. It is further stipulated and agreed that appellants, Lloyd L. Lindsey and the East Baton Rouge Parish School Board, waive any rights or objections which they may have based upon the right of action of the plaintiff to proceed by injunction in this matter to have title to the office determined. It is the purpose of these stipulations to narrow the questions presented to the Court of Appeal. It is further stipulated:
"(1) On January 5, 1961, the East Baton Rouge Parish School Board by a 4 to 3 vote elected Lloyd V. Funchess, plaintiff-appellee, Parish Superintendent of Schools for said Parish for the four-year term of office commencing July 1, 1961.
“(2) On June 8, 1961, the said School Board adopted a resolution by a vote of 6 to 5 rescinding its prior election of January 5, 1961.
“(3) On June 13, 1961, by a vote of 6 to 5 the East Baton Rouge Parish School Board elected defendant, Lloyd L. Lindsey, to the office of Parish Superintendent of Schools of said Parish for the four year term of office commencing July 1, 1961.
“(4) It is admitted by the defendants that the action of the defendant School Board adopted June 8, 1961, rescinding the election of January 5, 1961, was not based upon the authority of R.S. 17:54, pertaining to the removal of a Parish Superintendent for cause.
“(5) The East Baton Rouge Parish School Board as constituted on January 5, 1961, was composed of seven members, including two members recently elected at the time of the congressional elections of 1960.
“(6) The School Board as constituted on June 8, 1961, and thereafter was composed of eleven members, including four appointees made by the Governor pursuant to the authority of Act No. 7 of the Second Extra Session of 1960 [1961], who qualified and attended their first meeting on February 23, 1961.
“(7) On January 5, 1961, five of the seven members of the Board as fully constituted on that date had no knowledge of any plan to increase the membership of the East Baton Rouge Parish School Board by legislative action or otherwise, and the election and appointment of Parish Superintendent made on that day was in accordance with a practice which had prevailed in East Baton Rouge Parish since 1929, and which similarly was in accord with the customary practice prevailing generally throughout the State of Louisiana, as is shown by excerpts from the minutes of Louisiana Parish school boards appearing as Attachment ‘K’ in the record.
“(8) The action of the School Board of date June 8, 1961, in attempting to rescind the action of January 5, 1961, and the action of June 13, 1961, in attempting to elect Lloyd L. Lindsey as Superintendent was by a vote of six to five. Four of the six votes cast in favor of the action in each *359 case included the four recent appointees made under the authority of said Act No. 7 of the Second Extra Session of 1960 [1961],
“(9) On the basis of this stipulation and the stipulations in the record the issue on appeal is as to whether Dr. Funchess is presently the duly elected and duly constituted Parish Superintendent of Schools of the Parish of East Baton Rouge, or whether Lloyd L. Lindsey is presently the duly elected and duly constituted Parish Superintendent of Schools of the Parish of East Baton Rouge.”
Thus it is apparent from the above stipulation that the only question presented to us is whether the defendant-appellant, Lindsey, is entitled to the office of Superintendent of the East Baton Rouge Parish Schools or whether Funchess, appellee, is entitled to the office.
Due to the emergency of the situation and the time involved and since we have been called into extra-special session during vacation to dispose of this case, we take the liberty and privilege of quoting the pertinent portions of the opinion of the lower court, which are as follows:
“Lloyd V. Funchess, plaintiff herein, was reappointed by the East Baton Rouge Parish School Board at its regular meeting on January S, 1961, to the office of Parish Superintendent of Schools for a term commencing July 1, 1961, and terminating June 30, 1965. The hoard at that time was composed of members who were elected to office by the citizens of this parish, and at the time of their reappointment of the plaintiff, this board was fully constituted and the members voting on plaintiff’s appointment would have been the only members who would have normally been in office at the same time plaintiff commenced on his duties in the office of Parish Superintendent on July 1, 1961.
“However, during the month of February, 1961, an act was passed by the Legislature which called for the Governor to appoint four new members to the board. In accordance therewith, four new members were appointed to the board, and they duly qualified and assumed office on or about February 23, 1961. So, therefore, the membership of the board after that date was not the same as the board that had originally reappointed plaintiff to the office of superintendent on January 5, 1961. At the regular meeting of the board as constituted on June 8, 1961, the appointment of the plaintiff was rescinded, admittedly not for cause as provided for by Louisiana Revised Statutes 17:54 and that at a special meeting held on June 13, 1961, the board elected the defendant, Lloyd L. Lindsey, to the office of Superintendent of Education of the Parish of East Baton Rouge for the same identical term.
“The constitutionality of the act appointing four new members to the board was challenged in this Court, and this Court, through the Honorable C. A. Barnett, Judge, upheld the constitutionality of the act. Further, plaintiff’s suit here admits the constitutionality of the act.
“The plaintiff contends that his election by the board on January 5 gave him title to the office of Parish Superintendent and that the board cannot rescind his election or appointment except for cause as provided for by Louisiana Revised Statutes 17:54.
“In opposition to this, the defendants, East Baton Rouge Parish School Board and Lloyd L. Lindsey, contend that the board as constituted on July 1, 1961, is exclusively vested with the right to elect the Superintendent of Schools for July 1, 1961, through June 30, 1965; and the appointment of the plaintiff, Funchess, by the board as constituted on January 5, 1961, was void because the right to appoint a superintendent is exclusively vested in the School Board as constituted on the day the office begins, relying on the Supreme Court case of State ex rel. Wilson v. Hardin [123 La. 736], 49 So. 490, as authority in support thereof.
*360 “On these facts the plaintiff made application by rule to this Court to enjoin the defendant, Lindsey, from attempting to exercise or perform any of the duties of Parish Superintendent and to enjoin both defendants, Lindsey and the School Board from interfering with the plaintiff in the peaceful possession of his office and from interfering with the performance and discharge of his duties as Parish Superintendent. In the alternative, he prayed for a declaratory judgment decreeing him to be entitled to the office of Parish Superintendent. To the rule filed by plaintiff, the defendant filed a peremptory exception of no cause and no right of action which came on for hearing on June 27, 1961. At that hearing the Court refused to grant plaintiff an injunction, but since then the plaintiff has amended his petition and is again before the Court on an application for an injunction, and the defendant has again filed a peremptory exception of no cause and no right of action to the rule.
* * * * * • *
“Having found that the plaintiff is in possession of the office and that the defendants have interferred [sic] with his possession of the office, the Court will now consider whether the plaintiff has title to the office. If he is found to have title to the office superior to that of the defendant Lindsey the Court will grant the preliminary injunction. Conversely, if the Court finds that Mr. Lindsey has the superior title, it will refuse to grant the injunction.
“As authority for the proposition that the School Board as constituted on the day the office of Parish Superintendent begins is exclusively vested with the right to elect the superintendent, the defendants rely on the decisions in State ex rel. Wilson v. Hardin, 123 La. 736, 49 So. 490 (1909), and State ex rel. Russell v. Richardson, 178 La. 1029, 152 So. 748 (1934), both of which are Supreme Court cases. In the Wilson case the District Attorney of Catahoula Parish brought an action on behalf of the Parish School Board and J. W. Carter, claiming that Carter was the Superintendent of Education and that the defendant, John C. Hardin, was unlawfully in possession of the office.
“The Parish School Board of Catahoula Parish was organized on August 10, 1904, in accordance with the provisions of a 1902 act of the Legislature. Under the 1902 act the entire Parish School Board was appointed by the State Board of Education. When this board was organized, it elected J. W. Carter to serve for a four-year term commencing on August 10, 1904. After Carter’s appointment and in 1906, the State law governing the creation of Parish School Board was changed, and this new act of the Legislature provided that the School Board members would be elected from the wards at the next congressional election to be held on November 3, 1908. The act also provided that the School Board members appointed under the provisions of the 1902 act would hold over in office until their successors were elected in the general election to be held in Novem-her of 1908. Before the election of the School Board on November 3, 1908, the four-year term of the School Superintendent expired, and it became necessary lor the board which was then holding over in office to elect a superintendent for another four-year term. This hold-over board then elected Mr. Hardin to the office of Parish Superintendent. After the November, 1908, election, the newly elected School Board organized on January 19, 1909, and elected Carter for a term of four years. Counsel for Carter then argued that the phraseology of a 1908 act of the Legislature, which also governed the creation of the Parish School Board and the office of Parish Superintendent of Education, was different from the 1902 act and that this change in phraseology left no doubt that the newly elected members of the parish boards should have the right to elect the Parish Superintendent. The Court held:
“ ‘The language of the act of 1908, therefore, somewhat more exactly expresses the *361 idea that the hoard in each parish is to elect a superintendent for a term of four years, and it can have no application to the individuals composing such hoards at any particular time, since the hoards are corporations, and a corporation is a body which “continues always the same notwithstanding the change of the individuals who compose it." Rev.Civ.Code, art. 427. Parish superintendents are not only public officers (State [ex rel. Smith] v. Theus, 114 La. 1097, 38 South, 870), but they are as much the creatures of the Constitution and the law as are the parish boards, and whatever the boards may do with respect to the superintendents they do by authority of the law, and not otherwise. They are required to appoint the superintendents for terms of four years, and they may remove them for cause; but they have no authority to appoint a superintendent for a shorter or a longer term then [sic] four years, or to remove a superintendent, once appointed, without cause. When, therefore, in August, 1908, the term for which the superintendent of the parish of Catahoula had been appointed expired, the parish board was not only authorized, but was required, to appoint his successor for a term of four years, and, so long as the board was legally constituted, it made no difference whether it was composed of members who, under the law, were holding over, or who, under the law, had recently been elected.1 (Emphasis the Court’s.)
“This case does not stand for the proposition that the board as constituted on the day the office begins has the exclusive right to elect the Parish Superintendent. It stands for the proposition that the incoming newly elected board could not elect the superintendent for the simple reason that the office was already filled and that when the office of superintendent had expired, it was the duty of the old board which was then holding over to elect a superintendent, and so long as the board was legally constituted it made no difference as to what individuals composed the board at that time.
“In the case of Russell v. Richardson relief [sic] on by defendants, the La Salle Parish School Board at its regular meeting in January, 1929, elected the defendant, E. E. Richardson, to the office of Parish Superintendent of Schools for the four-year term beginning July 1, 1929. In July, 1932, approximately a year before the expiration of his term, the same board re-elected defendant Parish Superintendent for another four-year term beginning July 1, 1933. By January of 1933 the composition of the board had changed, and on January 3, 1933, the board rescinded Richardson’s election and on that day elected the plaintiff, J. D. Russell. The defendant Richardson then announced that he would refuse to relinquish his office to the plaintiff, and the School Board there adopted a resolution authorizing the District Attorney, as its legal adviser, to institute ouster proceedings against the defendant.
“It is also interesting to note that notwithstanding the fact that the board had elected Russell to the office and the defendant Richardson had refused to vacate the same, no physical struggle for possession of the office was contemplated by the board, and it should be further noted in this opinion the following quote:
“ ‘Suits to prevent the usurpation, intrusion into and unlawful holding of office are required to be tried and disposed of in a summary manner. Code Prac. art. 871; Rev.St. Sec. 2595.’ (Emphasis the Court’s.)
“In deciding that the board was within its rights in rescinding the election of the defendant, the Court stated:
“ ‘Act No. 100 of 1922 provides for the administration and supervision of the public schools of the state. Section 19 of the statute provides that each parish school board shall elect or appoint a parish superintendent, blit no time is fixed for such election or appointment. However, we are satisfied it was the legislative intent that a parish school superintendent should be elect *362 ed or appointed at some reasonable time before the beginning of his term of office.
“ ‘Here the board which assumed in July, 1932, to elect defendant as parish superintendent was not the same either in number or in personnel as the board which in January, 1933, elected plaintiff as parish superintendent and was in office on July 1, 1933, when the new term began.
" ‘While it may be true that a school board is a continuous body because of the overlapping terms of its various ward menu-bers, that fact does not authorize the board to elect or appoint a parish superintendent so far in advance of his term, as was done in this case. If this were permitted, the board could elect or appoint a parish superintendent at any time the majority of its members saw fit to do so, and thereby perpetuate a favored person in office. We think the better practice would be, and one more in consonance ivith the purpose of the law, to impose the duty of timely electing or appointing a parish superintendent upon the school board as constituted just prior to the beginning of the new term.’ (Emphasis the Court’s.)
“Therefore, this case does not stand for the proposition that the board as constituted on the day the office begins has the exclusive right to elect the Parish Superintendent. It stands for the proposition that the school superintendent should be elected or appointed at some reasonable time before the beginning of his term of office and that it would be better practice to impose the duty of timely electing or appointing the Parish Superintendent upon the School Board as constituted just prior to the beginning of the new term. The Court was not concerned with whether or not the defendant Richardson after having been validly elected could be removed for cause. The attack in that case was on the election, and the Court held that the election of Richardson was invalid, that it was conducted at an unreasonable time, that it was premature.
“Certainly in this case it cannot be said that the election of Dr. Funchess was premature or that his election was at an unreasonable time when practically all of the parishes in the state conduct the election of Parish Superintendent in January of the year for the commencement of the new term of office beginning on July 1st and the East Baton Rouge Parish School Board has conducted its elections in January since 1929. There was no attempt by the board as constituted on the date of plaintiff’s election to perpetuate him in office, as the majority of the membership of the board had no knowledge that the Governor was going to appoint four new members to the board before the term of his office began. The board’s election of the plaintiff was consistent with their prior businesslike practice and was certainly at a reasonable time prior to the beginning of the term of office.
“The Court agrees that under the facts of the Russell case it was the better practice for the board as constituted on the day the office begins to elect the Superintendent of Education because the old board had tried to perpetuate the defendant in office some six months before the new board that had rescinded defendant’s election had come into existence.
“However, in this case the board that was in existence at the time of plaintiff’s election was fully constituted, and the members voting on plaintiff’s election would have been the only members who would have normally been in office at the same time the office began.
“The provisions of R.S. 17:54 express the public policy that the School Boards should obtain the best qualified man to fill this important office and gives the board the right to obtain such a man even if it has to go out of the state to get him. If the School Board elects a qualified superintendent at a reasonable time prior to his taking office, and the law then gives the board the right to rescind the election at any moment without cause before the office be *363 gins, it seems to the Court that the uncertainty as to the status of the nominee to the office would have a deterrent effect on the public policy of getting the best qualified superintendent for the job.
“Under the provisions of R.S. 17:54, a superintendent if validly elected can only be dismissed for cause, and in the case of Bourgeois v. Orleans Parish School Board [219 La. 512], 53 So.2d 251 (1951), the Court held:
“ '(1) The parish superintendent is therefore an officer, elected for a definite and fixed term, removable only for the causes set forth in the statute by a majority vote of the membership of the parish school board, and by the great weight of authority the inference is that the Legislature intended by these provisions that the existence of the cause for removal must be determined after notice has been given to the superintendent of the charges made against him and he has been given an opportunity to be heard. Mechem on Public Officers, Section 454, p. 287; Throop, Public Of-' ficers, Section 364, p. 359; Annotation, Power to remove public officers without notice and hearing, 99 A.L.R. 336; 67 C.J.S., Officers, § 61, p. 255.
“ ‘Mechem states the rule as follows:
“ ‘ “In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed’ without notice or hearing.
“ ‘ “But on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly establishes [sic] by the great weight of authority that the power of removal can not, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense.” (Italics ours.)’
“Therefore, the plaintiff having proved to the Court possession of the office, interference by the defendants and a valid title to the office, the exception of no cause of action filed by the defendants is accordingly overruled, ’and the Court grants unto plaintiff a preliminary injunction as prayed for.”
We are of the firm opinion that the lower court’s reasons for judgment in granting the preliminary injunction were correct, and we are likewise of the opinion that the said reasons given for granting the injunction are applicable in holding that Dr. Funchess, the plaintiff herein, is the duly elected and constituted Superintendent of Schools of the Parish of East Baton Rouge for the term of four years beginning July 1, 1961.
On the question submitted to this Court, appellee, Funchess, is entitled to the office of Superintendent of Schools of East Baton Rouge Parish, and accordingly the judgment of the District Court is affirmed.