REID, Judge.
This is a suit brought in the name of the 'State of Louisiana on the relation of Rich■ard Kilbourne, District Attorney of the Twentieth Judicial District for the Parish of East Feliciana, State of Louisiana, against three police jurors of the Third Ward of that Parish. The suit is brought under the authority of LSA-R.S. 42:76(1) which reads thus:
“An action shall be brought in the name of the state in any of the following cases:
“(1) When any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within this state.”
The District Attorney alleges in his petition that the Parish of East Feliciana is divided into eight Police Jury Wards and each Ward is entitled to at least one Police Juror under the provisions of the Constitution and laws of the State of Louisiana, particularly LSA-R.S. 33:1223. He further alleges that the total population of the Parish of East Feliciana, according to the last preceding U.S. Census in 1960 is 20,198, and the additional Police Jurors, if any, to which any of the Wards are entitled would be governed by LSA-R.S. 33:1223, as amended by Act 182 of 1960 which reads as follows:
“In each parish having a population of less than fifty thousand inhabitants, there shall be appointed in addition to the police juror to which the ward is entitled, an additional police juror for each five thousand inhabitants which the ward contains, said appointment to be based upon the last preceding U.S. census or upon an official census authorized by the governing authority of the parish; also one additional police juror for each additional five thousand inhabitants or part thereof in excess of two thousand five hundred inhabitants. Such additional police jurors shall be appointed by the governor, shall be residents of the ward from which they are appointed and shall serve until the next election in which police jurors are elected, in which election their successors shall be elected.”
The District Attorney further alleges that no census has been taken for the Parish of East Feliciana or of any Ward of the Parish under the authority of the governing authority of said Parish; that according to the last U.S. Census, that of 1960, Police Jury Ward Three of the Parish had a population of 5,092 and therefore, under LSA-R.S. 33:1223 the Ward is entitled to one additional police juror because its population exceeds 5,000 inhabitants, which makes a total of two police jurors; and that in order for Police Jury Ward Three to be entitled to three police jurors, it would have to have-a total population of not less than 7,500 inhabitants. Nevertheless, three police jurors are now serving on the Police Jury of East Feliciana Parish from the Third Ward, namely, Jacob DeLee, Henry Fluker, and Robert P. Dugas, all of whom were elected in the general election of March 3, 1964 and subsequently commissioned by the Governor of the State of Louisiana. There were four candidates for the nomination of police jurors from Ward *442 Three voted on in the primary election, namely, Jacob DeLee, who received 564 votes; Henry Fluker, who received 542 votes; Robert P. Dugas, who received 478 votes; and Marshall N. Wright, who received 474 votes. The District Attorney shows that 686 voters cast ballots so each candidate received a majority of the total votes cast, and since there were two police jury offices to be filled, more candidates for the office received a majority vote than there were offices to be filled. Therefore, he contends, the two candidates receiving the highest votes, namely, Jacob DeLee and Henry Fluker, should have been selected pursuant to LSA-R.S. 18:358, which section, in pertinent part, reads as follows:
“If more candidates for offices of the same character receive a majority vote than there are offices to be filled, a sufficient number of nominees to fill the offices shall be selected from the candidates receiving the highest vote. If, after selecting nominees receiving the highest vote, there remains an unfilled office or offices for which two or more candidates have received a tie vote, the nominee or nominees shall be selected from among such candidates by a public drawing of lots, which drawing shall be conducted by the committee calling the primary after giving three days notice to the candidates affected to attend.”
Mr. Kilbourne says that under the above circumstances the said Robert P. Dugas is usurping, intruding into and unlawfully holding the office of police juror, and Jacob DeLee and Henry Fluker are legally entitled to the offices of police jurors for the said Ward Three. The District Attorney pleads in the alternative that one of tire three named candidates is usurping, intruding into and unlawfully holding office and the rights of all three, as pertains to the two police juror offices to which Ward Three is entitled, should be determined in this cause, and prays for trial by jury.
Robert P. Dugas and Jacob DeLee filed! peremptory exceptions of no cause of action based on the proposition that the facts-pleaded in the petition do not state a cause-of action for their ouster as police juror, but affirmatively show their election, the-promulgation of the election returns by the Secretary of State, their possession of commissions from the Governor of the State of Louisiana, their subscribing to the Constitutional oath of public officers, and their status as police jurors both de jure and de-facto, and that the balance of the petition merely pleads conclusions of law “to the effect that at some time unspecified and in-a manner unspecified the office held by one-of your exceptors or by the other named' defendant has ceased to exist, all of which said conclusions of law are without any basis in law whatsoever, neither the Constitution nor the statutes of the State of Louisiana providing for the abolition of said office.” A separate peremptory exception was filed on behalf of Henry Fluker to the same effect.
The District Attorney filed a supplemental petition in which he alleges that in his-original petition a trial by jury was sought,, that the exception filed by the defendants, involved the merits of the case to be tried by a jury, and that a special jury should be-summoned forthwith to try the issues presented by his original petition and by the exception filed. This supplemental petition was actually filed prior to the peremptory exception filed by Mr. Dugas.
The above mentioned pleadings make up-the entire record in this case. There were no witnesses, no exhibits, no evidence of any kind. Thus, the entire case rests upon whether or not the petition as filed by the plaintiff states a cause of action.
Argument on the motion by the District Attorney for a jury trial was heard on April 28, 1965. The Court overruled the motion. The District Attorney excepted and reserved a bill of exception and asked that the reasons of the Court be made a part thereof. Oral argument by counsel for defend *443 ants on the peremptory exceptions was heard on the same day. The case was then •carried over to May 4, 196S when the District Attorney was allowed to submit his argument and filed a brief for the State. 'The attorneys for defendants reserved the right to answer the brief. On the same ■day, for oral reasons assigned and dictated into the record, judgment was rendered and signed in favor of the defendants and ■against relator Richard Kilbourne, District Attorney sustaining the peremptory exceptions and dismissing the suit. It is from that judgment this appeal was taken.
The basis for the Trial Judge’s maintaining the exception of no cause of action is 'his contention that LSA — R.S. 33:1223 (upon which the District Attorney bases his con■tention that the Ward does not have sufficient population to justify three police jurors) “shows that there is no indication that the Legislature at any time made any ■provision whereby there would be a reduction in the number of Police Jurors.” In his oral reasons the Judge says the District Attorney concludes that as a matter of law :since the population has shrunk, one of the ■police jurors out of the three is usurping by unlawfully holding office. He then goes ■on to say that in the instant case where there has been an office and the office has been filled by an election, there can he no ■usurpation. He says there is no machinery provided by the State for automatic reduction, and no law that says when a police jury fluctuates the population that you pick up one man or lose one man automatically. He then proceeded to state that this is really not a question of usurpation but a question of reapportionment and that it is not the Court’s function to usurp the power of the Legislature but merely to interpret the law.
At the outset, it should be pointed out that the Trial Court was in error in treating the matter as merely a question of a wrongful usurpation in office. LSA-R.S. 42:76 carries the title “Actions to try right to office” and states that “An action shall be brought in the name of the state in any of the following cases: (1) When any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within this state * * * ” and therefore, the contention of the Trial Court that since there had been an election and a commission had been issued there could be no usurpation, is not apropos in this instance.
We are dealing with a claim that someone is unlawfully holding office, and Section 76 says such an action “shall be brought in the name of the state” and “[t]his action shall be brought by the attorney general of the state or by the parish district attorney of the parish in which the case arises against the offender, and the suit shall be filed in the district court of that parish.” Therefore, it is clear that the District Attorney was acting under the authority of R.S. 42:76. As a matter of fact, if the District Attorney has knowledge which would lead him to believe a person is unlawfully holding office it is his duty to bring the action — it is not discretionary with him. So, this Court does not feel that the issue before the Trial Court was one of usurpation but was actually one of unlawfully holding a public office.
We feel that the right of the District Attorney to file such a suit as he filed herein is completely upheld by the decision of the Louisiana Supreme Court in Thomas v. Fuller, (1928) 166 La. 847, 118 So. 42, in which it is stated:
“Perhaps a more serious question is presented by the contention of defendant that relators are seeking to force him to institute proceedings to remove two persons from office, under the intrusion act, when relators contend, in effect, that the removal should be made, because no such offices exist as the particular ones to which Turnley and Doughty were appointed, and when the act contemplates that, to invoke its provisions, there must be an office to be ttsurped, intruded into, or unlawfully held, and that, unless there is, a district *444 attorney or the Attorney General cannot be required to act.
“The position of defendant would have considerable force, if the nature of the supposed office was such that the occupant thereof acted alone in discharging its supposed duties. Then it might be said there would be nothing to remove him from. It might then be said that his acts would have no effect, and there would be no reason to invoke the intrusion act. Effect was given to such a contention as that here presented by defendant, in State ex rel. Hunter v. Hawley, 25 La.Ann. 487, where it was contended that a public administrator should be removed from office under the intrusion act, because the office of public administrator had been abolished. But here the occupant of neither of the supposed offices acts alone; both act, and may act only, as members of the respective boards to which they were appointed. Each of those boards, through a majority of a quorum, acts as a unit. Therefore each occupant acts as part of a governing authority to which he was appointed, which, when it acts, acts, it may be said, as a unit. Each sits on the board to which he was appointed, under a commission of the Governor, issued, to say the least, under color of law. In these circumstances there should be some way to reach an illegal situation, which is said to exist. In our view, that way is under the intrusion act.”
We cannot agree with the Trial Judge’s opinion that the holding in the Thomas case can be distinguished from the present case in that the Supreme Court in the Thomas case was providing for the testing of the right of an official to hold an office to which he had been appointed as against an allegation that the office never existed. And it should be pointed out here that if the District Attorney had not acted in this case as he did, under the authority of the Thomas case the citizens of the Third Ward could have brought a mandamus proceeding to require him or tl. Attorney General to do so. It would therefore follow that the District Attorney not only had a right to bring a suit but an obligation to do so. He set forth the facts under which he felt the suit should be brought and he should be entitled to have the matter tried on the merits.
This very point was brought up in the Thomas case, although in a somewhat different light. The Court there held:
“But defendant urges that he should not be required to institute the suits, because the petitions addressed to him do not set forth the necessary ultimate facts to warrant the ousting of Turnley and Doughty from said boards. In answer to this it may be said that it is obvious that those petitioning defendant to bring the suits think that the petition does set forth sufficient ground for action, and since they have the right to require the bringing of the suits, it is the duty of defendant to present, in proper form, their cause of action to the courts, and let the courts decide contradictorily with the incumbents of the alleged offices whether there is sufficient ground for ousting them. The question is one that a district attorney has no right to raise. His duty is to act, and let the courts decide contradictorily with the incumbents whether there is sufficient cause shown for removal.” (118 So. page 44)
Notice that the Court said it is the duty of the District Attorney to act and “let the Courts decide contradictorily with the incumbents whether there is sufficient cause shown for removal.” This clearly infers, it is the intention of the courts that matters such as this be tried on the merits.
State ex rel. Sanchez v. Dixon (1941) 4 So.2d 591, involved the rights of persons to hold offices to which they had been appointed by the Governor as a result *445 of increased population of certain wards in East Baton Rouge Parish. Here again the Court held, in overruling exceptions, that it was the right and duty of the District Attorney to question the right of the appointees to hold and exercise these functions. If it is a right and duty of the District Attorney to question the right to hold an office and he cites substantive law upon which he bases his claim (namely, here, R.S. 33:1223, which is used as a criterion for determining the number of police jurors to which a ward is entitled, it is not enough to merely interpret the substantive law but also certain pertinent factual situations must be considered. The number of police jurors prior to the last federal census must be determined and it must also be ascertained whether there has been a subsequent official census authorized by the governing authority of the parish. These facts as well as certain other relevant circumstances must be determined and the District Attorney, acting on behalf of the State, is both entitled and required to have such matters tried upon the merits. The late Judge Dore, in a concurring opinion in the Dixon case, made the following comment on the statutes fixing the number of police jurors to which a parish or ward is entitled:
“The act provides the method of ascertaining the census of the parishes and wards, and definitely fixes the time at which a change, if any, in the class a parish may fall, the change of membership, if any, and the number of police jurors a ward is entitled to, and that is at the general election following a United States census. The act does not create any new office, increase or decrease the existing offices, or cause any vacancy until then.”
Certainly this comment by Judge Dore gives legal basis for the District Attorney’s position that R.S. 33:1223 does provide a method by which a police jury can be decreased or is the substance of law upon which a decrease in the jury should be made, and under the jurisprudence set forth by State v. Dixon, supra, the petition of the District Attorney does set forth a cause of action.
Important factors are whether or not the census of 1960 was in truth, and in fact correct, and whether in fact it differed from the census of 1950, and, if so, in what respect and why. It is possible by applying the U.S. census Ward Three would be entitled to only two police jurors, but a further census directed by the Police Jury might show that the Ward is entitled to three police jurors.
All of these facts can only be determined by a trial on the merits and since this case is entirely barren of any material facts whatsoever, it is the holding of this Court that the ruling of the Trial Judge in maintaining the peremptory exceptions of no cause of action is reversed and the case is remanded for trial by jury as prayed for.
Reversed and remanded.